UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

TRAVIS DAVID WARREN,

    Plaintiff,

  v.

JOHN BATTLE, NP, OLE HANSEN, and
GARTH GULICK,

    Defendants.

Case No. 6:18-cv-00329-YY

OPINION AND ORDER

YOU, Magistrate Judge:

*Pro se* plaintiff, Travis David Warren, an inmate in the custody of the Oregon Department of Corrections ("ODOC"), has filed a civil rights action pursuant to 42 U.S.C. § 1983 against defendants John Battle, a nurse practitioner who was employed by the Lane County Adult Correctional Facility ("Lane County Jail"), and ODOC medical doctors, Ole Hansen and Garth Gulick (collectively, "state defendants"). Plaintiff alleges that while in the custody of Lane County Jail and later ODOC, defendants failed to provide him with surgery for a fractured elbow and thus denied or delayed medical care in violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks monetary and punitive relief.

The parties have filed cross-motions for summary judgment. For the reasons discussed below, defendants' motions for summary judgment (ECF #61, #83) are GRANTED, and

plaintiff's motions for summary judgment (ECF ##64, 80) are DENIED.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 342 (citing F.R.C.P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id*. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Cason City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134.

*Pro se* pleadings are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This rule protects the rights of pro se litigants to self-representation and meaningful access to the courts, . . . and is particularly important in civil rights cases." *Pouncil v. Tilton*, 704 F.3d 568, 574-75 (9th Cir. 2012) (citations and quotation marks omitted).

**DISCUSSION**

**I.      Exhaustion Under the Prison Litigation Reform Act**

Congress enacted the Prison Litigation Reform Act ("PLRA") "in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (internal citations omitted). A central feature of the PLRA is the "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). This provision requires pre-litigation exhaustion and mandates dismissal "'when there is no *presuit* exhaustion,' even if there is exhaustion while suit is pending." *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (emphasis in original) (quoting *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (*per curium*)).

The PLRA strengthened the exhaustion requirement such that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 85 (citation omitted). "Prisoners must now exhaust all 'available' remedies . . . even where the relief sought—monetary damages—cannot be granted by the administrative process." *Id.* (citation omitted). Moreover, "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Id.* (citation omitted).

"[F]ailure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove in a PLRA case." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014). It is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172 (citation omitted). "To be available a remedy must be available as a practical matter; it must be capable of use; at hand." *Id.* at 1171 (citations and quotations mark omitted).

Plaintiff alleges that he filed two grievances—one with the Lane County Jail and one with ODOC—regarding the "improper treatment and denial of medical care for [his] broken elbow." Second Am. Compl. 7, ECF #55. Plaintiff claims that he "appealed both grievances all the way. The process is completed." *Id.* However, plaintiff has not filed any evidence of the grievances or the grievance procedures of either facility, and neither have defendants.

Although exhaustion of administrative remedies is mandatory for prisoners challenging prison conditions, exhaustion must be pleaded and proven as an affirmative defense by the defendant. *See Albino*, 747 F.3d at 1176. In this case, defendants asserted the PLRA as an affirmative defense in their answers to the Second Amended Complaint. ECF #60, ¶5; ECF #75, ¶ 4. However, they do not argue lack of exhaustion in their motions for summary judgment or in response to plaintiff's motions for summary judgment. Therefore, defendants have waived the defense.

## II. Constitutional Claims

Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated when Battle failed to perform elbow surgery while he was incarcerated in the Lane County Jail and state defendants delayed in providing him the same surgery after he was transferred to ODOC custody. Second Am. Compl. 5-8, ECF #55. "Inmates who sue prison officials for injuries

suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016); *see also Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) ("[W]e hold that claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard.") (quoting *Castro*, 833 F.3d at 1070)).

### A. State Defendants—Eighth Amendment

A prisoner claiming an Eighth Amendment violation must establish, both objectively and subjectively, that the particular conditions of confinement are cruel and unusual. *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991). To satisfy the objective component, a prisoner must allege a deprivation that objectively is "sufficiently serious" to constitute an Eighth Amendment violation. *Id.* at 298. A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of the minimal civilized measure of life's necessities." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. *Farmer*, 511 U.S. at 834. Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S.

at 837.

Because "a prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,'" officials who respond reasonably are not liable. *Id.* at 844-45 (citation omitted). In the context of medical needs, "an inadvertent failure to provide medical care cannot be said to constitute 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow*, 681 F.3d at 987 (citations omitted). A prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Id.* at 988 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)) (internal quotation marks omitted).

        1.        **Deprivation of a Serious Medical Need**

The Ninth Circuit has held that a "serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quotation omitted). Examples of serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992).

State defendants admit that "plaintiff had a serious medical need, the fractured elbow." Answer Second Am. Compl. ¶ 2, ECF #60. However, ODOC medical records distinguish the seriousness of plaintiff's injury from the urgency of his need for surgery.

Plaintiff suffered an olecranon fracture on June 4, 2015, while arm wrestling. ECF #85, at 159. "The Olecranon is the 'pointy bone' of your elbow that sticks out when you bend your arm, and is actually the end of the ulna (forearm bone on pinky side). This type of fracture is often caused by a direct blow to the elbow or from falling and landing on the elbow." Decl. Christopher Digiulio, M.D. (Digiulio Decl.) ¶ 6, ECF #62. "Olecranon fractures are fairly common." *Id*.

When plaintiff entered ODOC custody in May 2016, he reported that he had fractured his elbow about a year before. *Id*. ¶¶ 11. The lack of edema in plaintiff's elbow and the amount of muscle in plaintiff's tricep[1] indicated that plaintiff had good use of his arm, even if he experienced "chronic pain" and "decreased extension." *Id.* ¶¶ 11, 21. In fact, illustrating the faculty of his arm, plaintiff reported that he worked out with weights on a regular basis. *Id.* ¶ 21.

State defendants provided a course of treatment that began with conservative care and progressed to examination by a specialist and ultimately surgery. *Id.* ¶¶ 21, 24. "Conservative care is always preferred to surgery which subjects the patient to even more risk factors, such as infection." *Id*. ¶ 21. "Surgery should be a last option, not the first, as surgery is invasive and comes with inherent risks. . . ." Id. ¶ 64.

Before his surgery, plaintiff received medical attention on nineteen occasions, including

---

[1] "Extension of the elbow is controlled by the tricep. The fact that the right tricep was heavily muscled suggested that there was no functional anatomical deficit." Digiulio Decl. ¶ 21. "The muscles in the arm did not show any atrophy as you would see if the arm was not being used." *Id.* ¶ 64.

multiple occasions related to plaintiff's involvement in altercations.[2] *Id.* ¶¶ 15, 23, 26. Doctors repeatedly saw plaintiff to check on his condition, evaluate his lab results, address his pain concerns, and refer him to external specialists. *Id.* ¶ 15. Doctors discontinued plaintiff's off-label use of gabapentin (also known as Neurontin),[3] and provided him with alternative medications, some of which he refused and others he failed to renew. *Id.* ¶¶ 11, 18, 33. Instead, plaintiff chose to take "10-12 packets of ibuprofen per day." *Id.* ¶ 35. All the while, plaintiff continued to lift weights and engage in altercations. *Id.* ¶¶ 15, 21, 23, 26. When plaintiff's condition did not improve, plaintiff was seen on June 30, 2017, by an orthopedic specialist, Dr. Yao, who recommended surgery; however, Dr. Yao noted that the surgery was "not an urgent need." *Id.* ¶¶ 25, 64. Once the Therapeutic Level of Care ("TLC") Committee approved the surgery on August 15, 2017, plaintiff had a consultation with another specialist, Dr. Carpenter, who performed surgery one month later. *Id.* ¶¶ 36, 46.

Following the surgery, plaintiff had routine check-ups with Dr. Carpenter and received further care when he experienced migration of one of the K-wires,[4] when he thought his elbow might be infected, when he felt like the pins were coming out, and after he "pop[ped] a stitch" playing basketball. *Id.* ¶¶ 50-60. During this time, plaintiff went against medical advice by playing basketball and weightlifting, and may have gotten into an altercation with his cellmate. *Id.* ¶¶ 60-61. Dr. Carpenter characterized plaintiff's weightlifting as "ridiculous," and wrote in a

---

[2] Plaintiff sought medical services after three altercations that took place on October 29, 2016, May 18, 2017, and July 2, 2017. Digiulio Decl. ¶¶ 15, 23, 26.

[3] "ODOC Health Services avoids using Neurontin for off-label use as there are many other options available." Digiulio Decl. ¶ 8.

[4] Dr. Carpenter observed: "Presently, the nonunion has nearly healed. He is having some migration of one of the K-wires, which is not uncommon." Dr. Carpenter Letter, November 6, 2017, ECF #62, at 58.

letter that plaintiff "really should not be weightlifting with this elbow" and "[i]t may have contributed some to his slow union of the revision of an olecranon fracture." Dr. Carpenter Letter, April 24, 2018, ECF #62-1, at 34 .

It remains undisputed that plaintiff presented a medical need that a reasonable doctor—including the doctors in this case—would find worthy of comment or treatment. State defendants provided medical treatment that followed ODOC's standard practice and procedure—conservative care before more intrusive methods, such as surgery. Because plaintiff's condition did not rise to the level of urgency under which ODOC doctors felt it was necessary to undergo immediate surgery, they prescribed medications to manage plaintiff's pain while observing his condition to assess further steps until plaintiff ultimately received surgery. Following the surgery, plaintiff received additional care from doctors, including check-ups and repairs, some of which were necessary as a result of plaintiff's own misconduct. These acts by state defendants do not constitute a deprivation, let alone "the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

### 2. Deliberate Indifference

State defendants contend that they lacked the culpable mind necessary to satisfy the deliberate indifference component of this analysis. This court agrees.

"Prison officials violate their obligation by 'intentionally denying or delaying access to medical care.'" *Clement*, 298 F.3d at 905 (citing *Estelle*, 429 U.S. at 104-05). "Before it can be said that a prisoner's civil rights have been abridged . . . the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06). "[T]he official must both be aware of the facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. 836. Even "[a]n inadvertent failure to provide medical care cannot be said to constitute 'unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 104-05.

In this case, state defendants knew of plaintiff's condition but did not consider it to be an "excessive risk" to his health or safety. *Farmer,* 511 U.S. at 837. As described above, defendants rendered medical care to plaintiff prior to surgery on numerous occasions. When an orthopedic specialist recommended plaintiff for surgery in June 2017, ODOC doctors and staff took steps toward getting plaintiff the surgery. Because plaintiff had engaged in a series of altercations, the TLC Committee initially decided to delay surgery until plaintiff had six months of "clear conduct."[5] Digiulio Decl. ¶ 27. However, plaintiff's doctors repeatedly petitioned the TLC committee for approval of plaintiff's surgery, and the TLC committee approved plaintiff's surgery on August 15, 2017. *Id.* ¶¶ 33, 36. Plaintiff was immediately notified that he would be scheduled to have an "[o]rthopedic consult locally." *Id.* ¶ 36. Plaintiff had been transferred to a different facility in another part of the state due to his fighting history, and had to have a new orthopedic consultation with a different doctor. *Id.* ¶¶ 29, 64. Plaintiff then had a consultation with Dr. Carpenter, who performed his surgery in September 2017. *Id.* ¶ 46.

Plaintiff's treatment was completed as of November 20, 2018. *Id.* ¶ 63. At that time, Dr. Carpenter reviewed plaintiff's x-rays and found that plaintiff's right elbow "required no further treatment and that there was a fibrous union of the olecranon fracture, which was stable." *Id.*

---

[5] This was to ensure that if plaintiff could not avoid an altercation, he would be able to protect himself, and also to ensure that plaintiff could avoid an altercation for the period of time it would take for his arm to heal properly. DiGiulio Decl. ¶ 27. Plaintiff had been the target of a recent attack, and having a noticeable injury could put him at risk for being attacked again. *Id*.

Even a month earlier, Nurse Practitioner Linda Gruenwald noted that plaintiff "had no range of motion difficulties." *Id.* ¶ 62.

In sum, it is clear that state defendants lacked the culpable state of mind for deliberate indifference because plaintiff received medical care that addressed his particular needs on several occasions while in ODOC custody. Before his surgery, ODOC doctors attempted to manage plaintiff's pain, but plaintiff refused medication and exacerbated his pain by regularly working out with weights and fighting. *Id.* ¶ 64. Plaintiff's fighting history contributed to his delay in receiving the surgery because ODOC had to transfer him to a different facility, which required him to see another specialist. *Id.* ¶ 29. Following his surgery, plaintiff has continued to disregard medical advice, and despite that, he has shown full use of his right arm while it is still healing to play basketball and lift weights. *Id.* ¶ 65.

Even viewing the evidence in the light most favorable to plaintiff, the delay did not constitute an "unnecessary and wanton infliction of pain." Plaintiff's pain was not wantonly disregarded in the sense that state defendants purposely withheld care that could have immediately been provided. And even if the issue turned on a factual dispute of whether plaintiff suffered substantial harm as a result of state defendants' medical choices, mere medical negligence does not amount to deliberate indifference.

### B.   NP Battle—Fourteenth Amendment

A claim for violation of the right to adequate medical care brought by a pretrial detainee against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard. *Gordon*, 888 F.3d at 1124-25 (citing *Castro*, 833 F.3d at 1070); *see also Husted v. Oregon*, No. 3:19-CV-00153-YY, 2019 WL 2270593, at *2 (D. Or. May 28, 2019) ("A pretrial detainee's claim of denial of adequate medical care arises under the

Due Process Clause of the Fourteenth Amendment.") (citing *Bell v. Wolfish*, 441 U.S. 520, 527 n.16 (1979) (holding that Due Process Clause is relied on for pretrial detainees' claims because a "[s]tate does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law")).

The elements of a pretrial detainee's medical care claim against an individual defendant under the Due Process Clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon*, 888 F.3d. at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id*. (citing *Castro*, 833 F.3d at 1071 (quotation marks and alterations omitted). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (citing *Castro*, 833 F.3d at 1071) (quotation marks omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (citing *Castro*, 833 F.3d at 1071) (quotation marks omitted).

Plaintiff was booked into Lane County Jail on July 24, 2015. ECF #85, at 32. At that time, he complained of a fracture in his right elbow and shooting pain. *Id*. at 33. He was prescribed 600 mg of ibuprofen. *Id.* at 157.

On August 13, 2015, plaintiff submitted a Health Services Request Form, in which he

stated that his broken elbow was not healing properly, he was still in pain, and he wanted "x-rays done to see what's going on." *Id.* at 144. Plaintiff was seen the following day, ibuprofen was again prescribed, and plaintiff's medical records from Slocum Orthopedics were ordered for "continuity of care while incarcerated." *Id.* at 141, 157. The records from Slocum Orthopedics revealed that plaintiff was seen on June 17, 2015, and diagnosed with a non-displaced right olecranon tip fracture. *Id.* at 159, 162. Plaintiff reported that he had sustained the injury while arm wrestling on June 4, 2015. *Id.* at 159. Slocum Orthopedics treated plaintiff with splinting and a sling, and prescribed Norco (acetaminophen and hydrocodone), ibuprofen, Tylenol extra strength, and Aleve. *Id.* Plaintiff was told that the injury would take six weeks to heal, and was admonished he was at risk of further injury if he returned to work too quickly. For best results, it was recommended that his arm be placed in a cast, but plaintiff opted for a sling instead. *Id.* at 162.

On August 26, 2015, plaintiff submitted another Health Services Request Form, complaining that his medication was not right and that he should be on naproxen and gabapentin. *Id.* at 139. Plaintiff was given 500 mg of naproxen and 300 mg of gabapentin beginning that day. *Id*. at 139, 194.

On September 1, 2015, plaintiff submitted a Health Services Request Form, in which he noted that gabapentin seemed to "take the edge off" his elbow pain but it was not strong enough for the pain to be tolerable, and asked to be seen. *Id*. at 138. Plaintiff was seen within two days, and his gabapentin dosage was doubled to 600 mg. *Id*. at 24, 194.

Plaintiff asked to be seen again about increasing his gabapentin on September 10, 2015. *Id.* at 137. When he was seen shortly thereafter, plaintiff reported that the pain in right elbow had improved, although he was still experiencing a shooting pain several times daily lasting

seconds to five minutes. *Id.* at 23. Plaintiff's evening dosage of gabapentin was increased to 900 mg. *Id.*

On September 23, 2015, plaintiff submitted a Health Services Request Form in which he complained that he had slipped in the shower, hit his broken elbow "hella hard," and possibly rebroken it. *Id.* at 136. When plaintiff was seen on September 25, 2015, no abrasion or obvious boney abnormality was noted. *Id.* at 23. Plaintiff said that gabapentin was helping and ibuprofen worked better than naproxen. Therefore, naproxen was discontinued, and plaintiff was prescribed 600 mg of ibuprofen. *Id*.

On October 12, 2015, plaintiff asked for the gabapentin to be increased to three times per day because he was in pain around four or five p.m. and did not receive pain medication until 11 p.m. *Id.* at 135. When he was seen, plaintiff explained that the gabapentin was helping but it wore off in the late afternoon. *Id.* at 22. Plaintiff was prescribed 900 mg of gabapentin two times per day, as well as two doses of 600 mg of ibuprofen two times per day. *Id*. at 190.

On January 20, 2016, plaintiff reported that his elbow pain was 6 out of 10. *Id.* at 19. Plaintiff continued to receive 900 mg of gabapentin. *Id*. at 19, 184. Possible "future surgery" was noted. *Id.* at 19. Plaintiff lacked full extension, but there was no palpable tenderness. *Id.*

Plaintiff complained again of elbow pain on March 25, 2016, and reported that the pain was controlled with ibuprofen in the morning. *Id.* at 16, 17. Plaintiff was transferred out of Lane County Jail and into ODOC custody in May 2016.

In sum, the facts show that Lane County Jail staff ordered plaintiff's records from Slocum Orthopedics shortly after he came into their custody. Those records indicated that plaintiff suffered from a fracture that was expected to heal without surgery if plaintiff rested it. Additionally, plaintiff was seen for his pain every time he complained of it. Plaintiff was given

higher doses of pain medication when he requested it, and when he reported that a different type of medication was more effective in alleviating his pain, his prescription was changed to accommodate his request.  Under these circumstances, it cannot be said that Nurse Practitioner Battle made an intentional decision that put plaintiff at substantial risk of suffering serious harm, failed to take objectively reasonable available measures to abate that risk, and by not taking such measures, caused plaintiff's injuries.  *Gordon*, 888 F.3d at 1125.  Plaintiff claims that Battle failed to order an x-ray and refer him to an orthopedic specialist.  Resp. 1, ECF #86.  However, even if that constituted negligence, lack of due care and negligence is not enough to constitute a Fourteenth Amendment violation.  *Gordon*, 888 F.3d at 1125.  Because Battle is entitled to judgment on this claim as a matter of law, his motion for summary judgment is granted.

## ORDER

Defendant's motions for summary judgment (ECF ## 61, 83) are GRANTED, and plaintiff's motions for summary judgment (ECF ## 64, 80) are DENIED.  Judgment shall be entered on behalf of defendants, and this case is DISMISSED.

IT IS SO ORDERED.

DATED  January 6, 2020.

                                                                /s/ Youlee Yim You
                                                                Youlee Yim You
                                                                United States Magistrate Judge